FILED

2018 MAR -1 PM 12: 04

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INFORMATION |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 18 CR 104 |
| v. ) | |
| ) | Title 18, Sections 1343 and 2, |
| EUGENE TURNER, ) | United States Code |
| ) | |
| Defendant. ) | |

GENERAL ALLEGATIONS        JUDGE ADAMS

At all times material and relevant to this Information:

A.   Defendant and His Business Entities

   1.   Defendant EUGENE TURNER was a resident of Animas, New Mexico.

   2.   Between in or around March 2006 and in or around April 2012, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant and Timothy E. McShane (named but not charged herein) established and caused to be established several corporations, including McShane Construct All International, LLC ("MCAI"), Rancho Hidalgo, LLC ("RH"), Lordsburg Land Development, LLC ("LLD"), Hidalgo Alfalfa Company, LLC ("HAC"), New Mexico Natural Beef & Pork, LLC ("NMN"), Firewater Hydrogen Fuel, LLC ("FHF), Granite Gap Development, LLC ("GGD), and New Horizons West, Inc. (NHW) (collectively, the "Companies").

3. In or around March 2006, McShane established McShane Construct All International, LLC ("MCAI"), an Ohio limited liability corporation with its principal place of business in Stow, Ohio. MCAI conducted construction-related business in Ohio and New Mexico. McShane held the title of owner and was familiar with all aspects of its operations.

B. The Scheme to Defraud Investors

4. From in or around February 2008 and continuing through in or around January 2013, Defendant, together with McShane, solicited investments in the Companies on a "private placement" basis in which Defendant and McShane gave investors promissory notes and/or founder's shares of stock in one of the Companies, which were not registered with the SEC nor traded on any public stock exchange.

5. From in or around September 2010 and continuing through in or around June 2015, Defendant solicited investments in an astronomy village operated by the Companies. Defendant gave investors promissory notes and/or a lease to use the property for a certain period of time. Defendant also provided the investor, for an additional investment, the option to build an observatory on the leased property.

6. Defendant and McShane gave investors approximately $2,400,000 worth of promissory notes in exchange for their investments in RH, HAC, NMN, and sold approximately $341,000 worth of founders' shares of FHF.

7. Defendant gave investors approximately $529,450 worth of promissory notes and collected approximately $1,137,256 for lease obligations and/or observatory construction as a result of their investment in RH, GGD, and NHW.

8. Defendant and McShane provided investors promissory notes in which they guaranteed a specific rate of return and/or a return based on profitability and payable on a set schedule, typically quarterly.

9. Defendant and McShane collateralized investments in the Companies with assets (e.g., land pledges, crop pledges, cattle pledges, water rights pledges, and real property) purportedly belonging to the corporations, when, as Defendant and McShane then well knew, the Companies did not have an ownership interest in those assets.

10. Defendant and McShane devised a scheme to defraud investors by inducing them to invest in the Companies through materially false and fraudulent misrepresentations and omissions of material facts about: (1) the Companies' financial condition; (2) collateral; and (3) the nature and disposition of the investors' money. Such representations and omissions included, but were not limited to, the following:

   a. From in or around February 2008 through in or around June 2015, Defendant and McShane fraudulently represented to investors that investment proceeds were to be applied solely and exclusively to costs associated with the operations of the specific company in which they invested, when in fact, and as Defendant and McShane then well knew, it was commingled, diverted for other projects, or used by Defendant or McShane for personal expenses.

   b. From in or around February 2008 through in or around June 2015, Defendant and McShane fraudulently represented to investors that they were going to pay a guaranteed rate of return when in fact, and as Defendant and McShane then well knew, they were paying investors minimal or zero return on their investment.

   c. From in or around February 2008 through in or around June 2015, Defendant and McShane fraudulently misrepresented to investors their ownership of investment collateral when in fact, and as Defendant and McShane then well knew, the investment collateral was double collateralized, already disposed, or was not fully purchased.

   d. From in or around February 2008 through in or around June 2015, Defendant and McShane fraudulently misrepresented to investors the

financial conditions of the Companies, their current profitability, and their future prospects, when in fact, and as Defendant and McShane then well knew, the Companies were consistently losing money and unable to meet their financial obligations

11. Defendant and McShane used the personal, social, and business relationships of current investors to establish relationships of trust and to find additional prospective investors.

12. Defendant and McShane touted the reputations and backgrounds of certain individuals that were experts in their fields and purportedly working for the Companies.

13. Defendant and McShane made false encouraging statements about the progress of the Companies to lull investors into a false sense of security, to encourage additional investments, and to prevent investors from requesting their money back or going to the authorities.

14. Defendant and McShane misused funds from new investors to make small payments to other investors who had complained about the lack of return on their investment.

15. Defendant and McShane misused investor funds while continuing to solicit new investors, including misappropriating investor funds for personal use and for projects unrelated to the investment.

16. Defendant and McShane had control over the bank accounts associated with the Companies and from which investor funds were misappropriated by Defendant and McShane.

C. <u>Representative Misappropriation of Investor Funds</u>

17. On or about August 13, 2010, Defendant and McShane deposited and caused to be deposited $70,000 into the HAC bank account that he received from an investor in HAC (El Encanto Vineyard project) known as W.S.

18. W.S. did not authorize Defendant or McShane to use W.S.'s investment funds to pay personal expenditures, construction expenditures for projects associated with other Companies, or make payments to existing investors in other Companies.

19. Between on or about August 13, 2010 and on or about August 20, 2010, Defendant and McShane made and caused to be made 35 transactions from the HAC bank account in the amount of approximately $66,108, for cash withdrawals, personal expenditures, construction expenditures associated with other Companies, and payments to investors in other Companies that were not authorized by investor W.S.

20. On or about August 4, 2011, Defendant and McShane deposited and caused to be deposited $54,999 into the HAC bank account that Defendant received from an investor in HAC (Cattle Project) known as C.C.

21. C.C. did not authorize C.C.'s funds to be used to pay personal expenditures, construction expenditures for projects associated with other Companies, or make payments to existing investors in other Companies.

22. Between on or about August 4, 2011 and on or about August 15, 2011, Defendant and McShane made and caused to be made 46 transactions of approximately $42,808 for cash withdrawals, personal expenditures, construction business expenditures, payments to investors in other Companies, and transfers to other Defendant or McShane controlled accounts that were not authorized by investor C.C.

23. On or about December 6, 2010, Defendant deposited and caused to be deposited $2,500 into the NHW bank account. Defendant had received the $2,500 from a GGD investor known as E.L.

24. On or about August 26, 2011, Defendant deposited and caused to be deposited an additional $5,750 into the NHW bank account. Defendant had also received the $5,750 from a GGD investor known as E.L.

25. E.L did not authorize E.L.'s funds to be used to pay personal expenditures, construction expenditures for projects associated with other Companies, or make payments to existing investors in other Companies.

26. Between on or about December 6, 2010 and on or about December 13, 2011, Defendant made and caused to be made 13 transactions, totaling approximately $6,907, for cash withdrawals, personal expenditures, construction business expenditures, and transfers to other Defendant or McShane controlled accounts. Investor E.L. did not authorize these transactions.

27. Between on or about on or about August 26, 2011 and on or about September 1, 2011, Defendant made and caused to be made six transactions, totaling approximately $6,000, for personal expenditures, payments to investors in other companies, and transfers to other Defendant or McShane controlled accounts. Investor E.L. did not authorize these transactions.

28. On or about December 2, 2010, Defendant deposited and caused to be deposited $2,500 into the NHW bank account. Defendant had received this $2,500 from a GGD investor known as J.O.

29. On or about December 21, 2010, Defendant deposited and caused to be deposited an additional $6,000 into the NHW bank account. Defendant received this $6,000 from a GGD investor known as J.O.

30. On or about December 2, 2011, Defendant deposited and caused to be deposited an additional $5,750 into the NHW bank account. Defendant also received this money from a GGD investor known as J.O.

31. J.O. did not authorize J.O.'s funds to be used to pay personal expenditures, construction expenditures for projects associated with other Companies, or make payments to existing investors in other Companies.

32. Between on or about December 3, 2010 and on or about December 13, 2010, Defendant made and caused to be made 15 transactions, totaling approximately $12,055, for cash withdrawals, personal expenditures, construction business expenditures, and transfers to other Defendant and McShane controlled accounts. Investor J.O. did not authorize these transactions.

33. Between on or about December 23, 2010 and on or about January 10, 2011, Defendant made and caused to be made 23 transactions, totaling approximately $23,650, for cash withdrawals, personal expenditures, construction business expenditures, and transfers to other accounts controlled by Defendant. Investor J.O. did not authorize these transactions.

34. On or about December 2, 2010, Defendant made and caused to be made seven transactions, totaling approximately $13,726, for cash withdrawals personal expenditures, construction business expenditures, and transfers to other Defendant or McShane controlled accounts. Investor J.O. did not authorize these transactions.

35. On or about August 1, 2014, Defendant deposited and caused to be deposited $10,000 into the LLD bank account. Defendant had received the $10,000 from an RH investor known as W.V.

36. On or about November 21, 2014, Defendant deposited and caused to be deposited an additional $8,000 into the LLD bank account. Defendant had also received that money from an RH investor known as W.V.

37. W.V. did not authorize W.V.'s funds to be used to pay personal expenditures, construction expenditures for projects associated with other Companies, or make payments to existing investors in other Companies.

38. Between on or about August 1, 2014 and on or about August 8, 2014, Defendant made and caused to be made 43 transactions, totaling approximately $9,709, for personal expenditures, construction business expenditures, and transfers to other accounts controlled by Defendant. Investor W.V. did not authorize these transactions.

39. Between on or about November 21, 2014 and on or about December 8, 2014, Defendant made and caused to be made 43 transactions, totaling approximately $8,026, for cash withdrawals, personal expenditures, construction business expenditures, and transfers to other accounts controlled by Defendant. Investor W.V. did not authorize these transactions.

40. On or about October 21, 2014, Defendant deposited and caused to be deposited $11,500 into the LLD bank account. Defendant had received this money from an RH investor known as M.M.

41. M.M. did not authorize M.M.'s funds to be used to pay personal expenditures, construction expenditures for projects associated with other Companies, or make payments to existing investors in other Companies.

42. Between on or about October 21, 2014 and on or about November 3, 2014, Defendant made and caused to be made 73 transactions, totaling approximately $10,506, for cash withdrawals, personal expenditures, construction business expenditures, and transfers to other accounts controlled by Defendant. Investor M.M. did not authorize these transactions.

43. Between in or around February 2008 and in or around December 2015, as a result of Defendant and McShane's scheme to defraud, investors in the Companies incurred a

combined out-of-pocket loss of more than approximately $4,407,706. In addition, investors in the Companies did not receive the interest payments Defendant and McShane guaranteed or the investment gains that Defendant and McShane falsely promised during the scheme.

COUNT 1
(Wire Fraud, 18 U.S.C. §§1343 and 2)

The United States Attorney charges:

44. The factual allegations of paragraphs 1 through 43 of this Information are realleged and incorporated by reference as though fully set forth herein.

The Scheme to Defraud

45. From in or around February 2008 and continuing to in or around December 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant EUGENE TURNER devised and intended to devise a scheme and artifice to defraud and obtain money and property from investors, by means of false and fraudulent pretenses, representations, and promises, and aided and abetted others in the same.

The Use of Interstate Wire Communications

46. On or about October 21, 2014, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to wit: an investor known as M.M., sent a wire transfer of approximately $11,500 from M.M.'s bank account, located in Indiana, to an LLD bank account controlled by Defendant, located in Arizona.

All in violation of Title 18, United States Code, Sections 1343 and 2.

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Edward F. Feran
EDWARD F. FERAN
Chief, General Crimes Unit